STAPLETON, Circuit Judge,
Dissenting:
I agree with the Court that principles of claim preclusion can properly be applied with respect to claims falling within the non-core jurisdiction, as well as the core jurisdiction, of a Bankruptcy Court. I assume, without deciding, that the Bankruptcy Court would have had non-core jurisdiction over CoreStates’ claim against Huls. I further agree that principles of claim preclusion can properly be applied with respect to crossclaims asserted between creditors in a bankruptcy proceeding.
I am constrained to dissent, however, because the Court reaches its conclusion that CoreStates’ claim against Huls is barred only by ignoring well-established principles of claim preclusion. While purporting to apply those principles, the Court proceeds to fashion an unprecedented “entire controversy doctrine” for bankruptcy litigation. Because the parameters of this new doctrine are so broad and ill defined, I fear that much mischief will be done by today’s decision.
The Court holds that any claim that could have been asserted in a bankruptcy proceeding by anyone objecting to confirmation of a plan of reorganization against anyone who would benefit from confirmation is barred from being asserted in a subsequent proceeding if the facts underlying the objections raised in the confirmation proceeding and the subsequent claim are “essentially similar.” This holding ignores the fact that under traditional principles of claim preclusion the scope of preclusion arising from a judgment is determined by the claim underlying the judgment and is limited to the rights asserted between the claimant and the party against whom the claim is asserted.
The Court is, of course, correct that modern principles of claim preclusion view the concept of a “claim” broadly. When “a valid and final judgment rendered in an action extinguishes the plaintiffs’ claim pursuant to the rules of merger or bar ..., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.” Restatement, Judgments 2d, § 24(1).
Claim preclusion cannot be applied, however, without reference to the party who asserted the claim underlying the prior judgment. Thus, a judgment for or against a plaintiff in a prior proceeding rarely affects the claims assertable by other parties to that proceeding even though they may arise out of the same transaction. In the absence of a compulsory counterclaim rule or statute, for example, a defendant who fails to assert a counterclaim arising out of the same transaction is normally not barred from pressing his claim in a subsequent proceeding. Id. § 22.[1] The only narrow exception to this *208 rule is where the plaintiff in a prior proceeding has secured a-favorable judgment on her claim and successful prosecution of a second action would nullify the initial judgment or would impair rights established in the initial action against the defendant. Id. § 22(2).[2] Since a judgment in the plaintiffs favor on a claim establishes rights only as between the plaintiff and the opponent of the claim, the rationale for this exception has no application when the defendant in the subsequent suit is not the original plaintiff. Thus, not surprisingly, there appears to be no ease in which a judgment on a plaintiffs claim has been held to preclude by merger or bar a claim that would have been a cross-claim if asserted in the original action.
While a claim preclusion analysis must thus focus on the claimant and his or her claim, the universe of “potential claimants” is, of course, not limited to the plaintiff in the original action. As the majority notes, if a defendant in the original action asserts a counterclaim or a crossclaim and a final judgment is rendered with respect to that claim, he becomes a claimant for purposes of claim preclusion analysis. Id. § 23. Thus, had CoreStates asserted a claim against Huls in the bankruptcy proceeding, principles of claim preclusion could properly be applied with reference to that claim. See Charter Oak Fire Ins. Co. v. Sumitomo Marine & Fire Ins. Co., 750 F.2d 267, 270 (3d Cir.1984). CoreStates asserted no such claim, however.
While I agree that application of principles of claim preclusion in the context of a bankruptcy proceeding requires flexibility and must take into account the nature of the bankruptcy process, those principles cannot fairly be stretched far enough to effect a preclusion of CoreStates’ claim here. In order for claim preclusion to preclude, there must be a final judgment in favor of a claimant into which the precluded claim has merged or a final judgment for the defendant that bars another action by the claimant on the same claim. See Restatement, Judgments 2d, §§ 18, 19. A confirmation order may be viewed as a judgment in favor of creditors on their claims against the debtor. To the extent claims have been disallowed, it may also be viewed as a judgment in the debtor’s favor on the disallowed claims. Moreover, there is an in rem aspect to the judgment entered at the end of a confirmation proceeding. See 28 U.S.C. § 1334(a). Under traditional principles of claim preclusion, however, none of these judgments would extinguish a claim between creditors who have not raised claims against each other in the bankruptcy proceeding.[3]
In the bankruptcy proceeding, CoreS-tates asserted no right to relief from Huls. Moreover, it claimed no right to receive from the debtor’s estate the $600,000 ulti *209 mately received by Huls. It had no such right to assert. Accordingly, the only way one can conclude that CoreStates made a claim against Huls in the bankruptcy proceeding, as the Court does, is to hold that an objection to confirmation of a plan of reorganization constitutes a claim against anyone who has an economic interest in having the plan confirmed. Since virtually all non-objecting creditors will have such an interest, this holding will require that any party considering an objection canvass the entire universe of creditors to determine whether it has a claim against one of them that might conceivably be regarded as arising from the same or similar underlying events.
The burden thus imposed will be greatly exacerbated by the Court’s broad vision of what constitutes the same or similar underlying events. CoreStates’ objection to confirmation of the plan was not based, directly or indirectly, on its Subordination Agreement with Huls. Rather, to the extent it was related to Huls at all, CoreS-tates’ objection was based on the claim that the plan “discriminate^] unfairly” among a class of secured creditors in violation of section 1129(b). The claim CoreS-tates here seeks to assert is a breach of contract claim based on allegations that it entered into a Subordination Agreement with Huls which Huls breached when it declined to pay $600,000 to CoreStates after it received that amount from UCT. The Court fails to satisfactorily explain how CoreStates’ two claims can reasonably be deemed the same cause of action for claim preclusion purposes.
The section 1129(b) claim that CoreS-tates included in its objection to confirmation of the plan was based on the respective circumstances of the members of the identified class of secured creditors, their treatment under the proposed plan, and the feasibility of alternative plans of distribution. In contrast, the claim that CoreS-tates here seeks to press is based on the terms of a Subordination Agreement entered long before the bankruptcy and the fact that Huls received $600,000 from UCT because of UCT debt obligations to it. I perceive no “essential similarity of the [legally relevant] underlying events giving rise to” these claims, and, indeed, I can think of no evidence that would be material to both claims. It would not be necessary for CoreStates, in proving its breach of contract claim, to even refer to the bankruptcy proceeding or the plan of reorganization. It would suffice to show only that Huls received monies from UCT on account of UCT’s debt obligation to Huls. The Court seeks to gloss over the distinctiveness of these claims by asserting that “the objection and CoreStates’ present claim addressed the same factual issue: who should receive and retain the $600,000 VCT was prepared to pay.” Op. at 206. The fact of the matter, however, is that the claim asserted in the bankruptcy proceeding had absolutely nothing to do with whether Huls was entitled to retain the $600,000 payment it would receive under the plan and the claim asserted here has absolutely nothing to do with whether Huls was entitled to receive $600,000 in the bankruptcy.
Because an objection to a plan will now be regarded as making a claim against all who would benefit from confirmation and because the concept of a single cause of action will now be an elastic one, it will be extraordinarily difficult for a creditor in the Third Circuit to determine what cross-claims it must or need not assert. Since the penalty for a mistaken choice is forfeiture, it is not difficult to predict the ultimate result of the Court’s holding: multitudinous protective filings of claims against nondebtors and the needless complication of bankruptcy confirmation proceedings.
I would reverse the judgment of the District Court.

. Section 22 of Restatement, Judgments 2d, provides:
(1) Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2).
(2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:
*208 (a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or
(b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.

. As noted in the commentary to § 22(2):
For such an occasion to arise, it is not sufficient that the counterclaim grow out of the same transaction or occurrence as the plaintiff’s claim, nor is it sufficient that the facts constituting a defense also form the basis of the counterclaim. The counterclaim must be such that its successful prosecution in a subsequent action would nullify the judgment, for example, by allowing the defendant to enjoin enforcement of the judgment, or to recover on a restitution theory the amount paid pursuant to the judgment (see Illustration 9), or by depriving the plaintiff in the first action of property rights vested in him under the first judgment (see Illustration 10)....

. An in rem judgment, of course, is "conclusive as to interests [in the res ] but does not bind anyone with respect to personal liability.” Restatement, Judgments 2d, § 30. Here, CoreStates asserts that Huls is personally liable to it in the amount of $600,000. It has not, and could not, contend that it had a right to receive a $600,000 distribution from the assets of the debtor's estate based upon its agreement with Huls.